Anthony SCALISE, Individually and ás Trustee for Pecan Oaks Shopping Center Joint Venture, and Pecan Oaks Shopping Center Joint Venture, Appellants,

v.

Charles W. McCALLUM, Jr., Appellee.

No. 05-84-01103-CV.

Court of Appeals of Texas, Dallas.

Nov. 6, 1985.

Rehearing Denied Dec. 23, 1985.

Deborah G. Hardwick, John A. MacKintosh, Jr., Thompson & Knight, Dallas, for appellants.

Dale Wootton, Dallas, for appellee.

Before AKIN, ALLEN and DEVANY, JJ.

ALLEN, Justice.

This case concerns a usury claim which grew out of a settlement following the usury claimants' default on a note that they had given as party payment in a sale of real estate. The trial court awarded judgment and damages for usury to Anthony Scalise, who sued individually and as trustee for Pecan Oaks Shopping Center Joint Venture, and to the Pecan Oaks Shopping Center Joint Venture. Scalise and the joint venture nonetheless appeal, complaining that the trial court miscalculated the damages. Charles W. McCallum, the losing party at trial but appellee here, raises cross-points contending, in essence, that the trial court should have denied Scalise and the joint venture judgment on their usury claim and instead should have granted judgment to McCallum on a different note he received from Scalise as part of the settlement.

The allegedly usurious transaction consisted of an initial note which the parties agree was, in itself, not usurious and a settlement agreement which came after Scalise and the joint venture defaulted on that note. As we view the case, the controlling legal issue is whether the initial note and the later settlement agreement were one loan transaction or whether they were two separate and distinct transactions, the first a loan and the second a new substituted agreement in which each side tendered to the other new and different consideration. If these were one loan transaction, the loan may be usurious. If these were two transactions, a loan and a later new substituted agreement, then there could be no usury, given the nature of the new agreement. We hold that there were two transactions, and, accordingly, we reverse and render judgment in favor of McCallum.

Scalise gave McCallum the initial note as part of a deal for the purchase of land. The note was for $272,355.92. Scalise signed it on May 5, 1977, and it was to come due on December 5, 1977. It bore interest of 9½% until December 5, 1977, after which the interest on any remaining balance would increase to 10%. The note also provided for 10% attorney's fees for attorney's services in collecting the note in the event of default. A lien on the land secured the note.

The parties agree that Scalise made payments of both interest and principal before the due date, December 5, 1977. However, by the due date, Scalise had failed to pay the last month's interest and the bulk of the principal. McCallum turned the note over to his attorney (and brother) for collection, and the attorney sent Scalise a notice of default and demand for payment. This demand was for remaining principal, $222,355.92, for remaining interest of $1,736.10, for attorney's fees of $22,409.20, and for newly-accruing post-default interest. Later, in a letter dated January 10, 1978, McCallum's attorney gave Scalise and the joint venture notice of a trustee's sale to be held on February 7, 1978, to foreclose the lien on the property. Scalise could not raise the money to pay the demand in full (or even the principal and interest) and thus could not have stopped the foreclosure if McCallum had been determined to go through with it.

But before the foreclosure, on January 19, 1978, the parties reached a settlement agreement. Under this agreement, Scalise paid $215,368 in cash to McCallum. In addition, he gave McCallum a new note for $10,000 and assumed McCallum's $13,441.35 debt for broker's commissions arising out of the sale of the land to Scalise and the joint venture. In return, McCallum gave Scalise and the joint venture an immediate and complete release of the lien on the land.

Scalise paid the $13,441.45 debt to the broker. He did not pay the $10,000 note to McCallum, which was due on July 19, 1978. Instead, he sued McCallum, alleging usury. McCallum counterclaimed on this $10,000

note and now, on appeal, seeks judgment in his favor on that counterclaim.

Scalise and the joint venture's basic premise is that the initial note and the settlement agreement were, in effect, one loan transaction. They conclude from this premise that the entire loan transaction was usurious. Texas decisions have held that usury must be determined from a construction of all the documents constituting the loan transaction, interpreted as a whole. *E.g., Spanish Village, Ltd. v. American Mortgage Co.,* 586 S.W.2d 195, 199 (Tex. Civ.App.—Tyler 1979, writ ref'd n.r.e.). Therefore, the first question is whether it is proper to construe the initial note and the settlement as a single loan transaction.

■ We hold that the original note and the settlement were not a single loan transaction. In *RepublicBank Dallas v. Shook,* 653 S.W.2d 278, 282 (Tex.1983), the Texas Supreme Court faced the question of whether a certain loan was simply a renewal of a previous note given to finance a stock purchase or a "new" loan. The court held that "[t]he parties had dealt previously concerning loan money for the Financial Services stock, but since the Bank had the option of calling the loan, the further extension of credit was a 'new' loan." *Id.* Similarly, since McCallum had the option to demand full payment and to foreclose if Scalise failed to tender it, the settlement agreement was a wholly new transaction.

■ The settlement was in reality the substitution of a new agreement concerning the sale of the land to Scalise. The parties scrapped entirely the old arrangement in which Scalise was to pay the bulk of the purchase price over time under the terms of a loan and receive a title freed of McCallum's lien only after this loan was completely paid and the indebtedness to McCallum extinguished. The parties substituted instead a new arrangement with

new consideration from both sides. Scalise under this new arrangement paid the bulk of the purchase price immediately in cash and received immediately a title free of McCallum's lien. McCallum parted with his property (which he could have regained) and his lien on it without the total extinction of Scalise's indebtedness to him, but he received at once the great bulk of the purchase price. The substitution of a new agreement occurs when a later agreement is so inconsistent with a former agreement that the two cannot subsist together. *Willeke v. Bailey,* 144 Tex. 157, 160, 189 S.W.2d 477, 479 (1945); *Kaufhold v. Curtis & Ewing,* 557 S.W.2d 334, 336 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ). The obligations and rights of the parties in the settlement agreement are so completely different from those set out in the initial note that the two agreements cannot be thought to subsist together. The settlement agreement was thus a new substituted agreement superseding and extinguishing the old agreement. *Kaufhold,* 557 S.W.2d at 336; *Ed Hoffman Motors v. G.F.C. Corp.,* 304 S.W.2d 216, 217 (Tex.Civ. App.—San Antonio 1957, writ ref'd n.r.e.); *see also Lawler v. Lomas & Nettleton Mortgage Investors,* 691 S.W.2d 593, 594–95 (Tex.1985) (pointing to difference in terms between original note and renewal note, supreme court held that the two notes reflected separate obligations). Thus, it is not appropriate to regard the consideration Scalise gave in the settlement agreement as interest on the initial loan. *Cf. Wright Titus, Inc. v. Swafford,* 133 S.W.2d 287, 296 (Tex.Civ.App.—Austin 1939, writ dism'd judgment cor.) (borrower held in no position to claim that amount of note lender waived as consideration in settlement agreement substituting new party to pay note was usurious interest).[1]

■ Looking at the settlement agreement as a completely new transaction, we

---

**1.** We must note that even if we were to accept Scalise's and the joint venture's basic premise that the settlement agreement was an extension or renewal of the initial loan, we would still face serious questions in deciding whether the loan was usurious, including (1) how much of the money paid or owed to McCallum after the

settlement was "additional consideration" for attorney's services and thus not interest, (2) whether the assumption of the debt for the broker's commission was also additional consideration for services, (3) whether the settlement extended the loan until January 19, 1978, the date of the settlement, July 19, 1978, the due

can see no usury. The two notes Scalise made as part of the settlement bore interest within the legal limit at the time. We conclude that McCallum was not liable for usury. We render judgment that appellants Anthony Scalise and Pecan Oaks Shopping Center Joint Venture take nothing from appellee, Charles W. McCallum, Jr. Further, since it is undisputed that Scalise never paid any part of the $10,000 settlement agreement note, we conclude that McCallum was entitled to judgment on that note. Accordingly, we sustain his first cross-point, reverse, and render judgment awarding McCallum $10,000, the principal on the note, plus applicable interest. Since the $10,000 note contained a provision for attorney's fees of 15% in case of default, and since Scalise nowhere contested the reasonability of the attorney's fees on the $10,000 note, Scalise is also liable for attorney's fees based on that note. *F.R. Hernandez Construction & Supply Co., Inc. v. National Bank of Commerce of Brownsville*, 578 S.W.2d 675, 676–77 (Tex.1979). We thus also render judgment that McCallum recover $1,500 in attorney's fees for services in collecting that note.

Reversed and rendered.

date on the $10,000 note, or January 19, 1979, the due date on the note evidencing the debt for the broker's commissions, and (4) how interest on the extended loan should be calculated, given answers to all these other questions. However, in light of our decision that there were two distinct transactions and that the settlement was not an extension or renewal of the original loan, we need not address these other questions.